993 F.2d 1538
 1993-1 Trade Cases P 70,239
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
MONTGOMERY COUNTY ASSOCIATION OF REALTORS, INCORPORATED,
Plaintiff-Appellee,
v.
REALTY PHOTO MASTER CORPORATION, Defendant & Third Party
Plaintiff-Appellant,
and
David K. HERMRECK, Defendant,
Delores GICK; Martha J. Schmidt; Robert L. Gruen;
Barbara Stone; George Matheos; Lisa Taylor; Donald May;
Bennie Walton; Rita R. Orcino; John Gilbert; B. George
Ballman; Harold H. Huggins; Judith Difilippo; Patrick
Kane; Joanne Anderson; Toby Rhodes; Dale L. Ross; Peter
Rucci; Shannon & Luchs Company; William Ellis, Third-Party
Defendants.
 No. 92-1300
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 29, 1993
Decided: May 20, 1993
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Benson E. Legg, District Judge. (CA-90-2141-L)
 Argued: William Henry Hurd, Richmond, Virginia, for Appellant.
 Edward Tuck Colbert, Sr., Kenyon & Kenyon, Washington, D.C., for Appellee.
 On Brief: Richard Gruver Kline, Sr., Suzanne M. Parker, Kenyon & Kenyon, Washington, D.C.; Benedict George Ballman, Sr., Conroy, Ballman & Dameron, Gaithersburg, Maryland, for Appellee.
 D.Md.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, ERVIN, Chief Judge, and HAMILTON, Circuit Judge.
 PER CURIAM:
 
 
 1
 This is an interlocutory appeal from the district court's denial of Realty Photo Master's (RPM's) request for a preliminary injunction. RPM sought to enjoin Montgomery County Association of Realtors (MCAR) from upgrading the computer services MCAR offers its customers because the upgrade would alleviate the need of these customers to purchase certain services from RPM. RPM claims that the district court abused its discretion in denying RPM's request for a preliminary injunction and erred in its treatment of the affidavit of RPM's expert. Finding no error in the proceedings below, we affirm.
 
 I.
 
 2
 Montgomery County Association of Realtors (MCAR) is a voluntary association which provides services to member realtors. Since the 1960s, MCAR has circulated to its members, for a fee, information regarding real estate available for sale in the Montgomery County area. Until recent years, MCAR compiled this information in softbound volumes (similar to telephone books), and included such data as the address of the residence, its age, lot size, number of rooms, square footage, and asking price along with a picture of the house. MCAR's means of disseminating the real estate information changed with advances in technology. By 1978, MCAR was able to send its members information via computer networks. While the books MCAR had relied upon previously were often partially outdated by the time they were received by a MCAR member, the new computer technology allowed MCAR to keep its listings up to date.
 
 
 3
 The primary drawback of the computer technology was that it was costly and difficult to transmit photographs via computer systems. From 1978 to 1988, MCAR distributed written property descriptions via its computer network, and continued to supplement its computer service with books containing pictures of the listed properties. In 1988, MCAR discontinued printing the photo books and pictures of listed properties were unavailable through MCAR.
 
 
 4
 MCAR began studying ways in which computers could better serve the needs of its members, including ways in which computers could be used to transmit photographic images. Meanwhile, Realty Photo Master Corporation (RPM) began offering a photographic service to MCAR's members. Using an MCAR's member's access code to the MCAR computer, RPM identified new real estate listings, photographed the properties, and then provided photographs of the real estate (via computer) to its customers, all or most of whom were also customers of MCAR.
 
 
 5
 In 1990, MCAR learned that RPM was accessing its computer database. MCAR filed suit against RPM alleging copyright infringement, trade secret misappropriation, and breach of contract. In essence, MCAR claimed that it had a copyright interest in its computer database and that it was illegal for RPM to access MCAR's computers, even if RPM claimed it did so as agent of certain MCAR customers. RPM filed a counterclaim alleging that MCAR had conspired to restrict trade and to boycott RPM in violation of the Sherman Antitrust Act.
 
 
 6
 Subsequently, MCAR opened competitive bidding for vendors interested in providing photo enhancement capabilities to MCAR's computer system. In October 1991, MCAR announced to its members its intention to again provide photographs of listed properties to its membership, this time through MCAR's computer network. RPM asked the district court to issue a preliminary injunction prohibiting MCAR from updating its computer database to add photograph transmission capability.
 
 
 7
 After three days of evidentiary hearings in December of 1991, the district court denied RPM's motion for a preliminary injunction. The court assumed for purposes of the hearing that RPM was legally entitled to tap into MCAR's computer database as an agent for several of MCAR's customers. The primary issue on appeal is whether the district court erred in denying RPM's motion for a preliminary injunction.
 
 II.
 
 8
 A preliminary injunction is an extraordinary remedy to be granted only if the moving party clearly establishes entitlement to the relief sought. Fed. R. Civ. P. 65; Murrow Furniture Galleries, Inc. v. Thomasville Furniture Indus., Inc., 889 F.2d 524, 526 (4th Cir. 1989); Federal Leasing, Inc. v. Underwriters at Lloyd's, 650 F.2d 495, 499 (4th Cir. 1981). A decision to deny a motion for preliminary injunction is discretionary with a district court and may not be set aside unless an abuse of discretion is shown. Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 358 (4th Cir. 1991). Factual findings underlying the disposition of a preliminary injunction motion should be overturned only if a reviewing court has a "definite and firm conviction that a mistake has been committed." Id. Of course an appellate court will overturn a district court's decision if made under an improper legal standard. Id.
 
 
 9
 Here the district court properly analyzed RPM's request for preliminary injunctive relief under the four-part standard set forth in Blackwelder Furniture Co. v. Seilig Mfg. Co., which is essentially a balance-of-hardships test. 550 F.2d at 189, 196 (4th Cir. 1977). Under Blackwelder, the probable irreparable harm to the movant in absence of an injunction is weighed against the likely injury to the nonmoving party if the injunction is granted. In judging where the balance falls, the court gauges the prospective merits of the movant's case as well as the public interest in the controversy. Id. at 196.
 
 
 10
 The district court found that RPM would be more harmed by the absence of an injunction than would MCAR if an injunction were issued. This finding is not erroneous, given evidence that RPM is likely to suffer economic injury severe enough to put it out of business if MCAR is allowed to provide photographic information to the customers RPM now services. While purely economic injury does not constitute irreparable harm sufficient to warrant injunctive relief, we have held that the right to continue a business is not measurable solely in economic terms. See Federal Leasing, Inc. v. Underwriters at Lloyd's, 650 F.2d 495, 500 (4th Cir. 1981); Blackwelder, 550 F.2d at 197.
 
 
 11
 Where, as here, the balance of hardship decidedly favors the moving party, it is enough to obtain injunctive relief if grave or serious questions are presented, and a plaintiff need not show a likelihood of success. Blackwelder, 550 F.2d at 195. The district court concluded that even under this relaxed standard, RPM had failed to demonstrate a probability that it could prove the elements underlying its antitrust counterclaims. We agree.
 
 
 12
 RPM's primary argument on appeal is that MCAR's practice of selling the multiple list information along with the pictures of the real estate constitutes an illegal "tying arrangement" prohibited under section 1 of the Sherman Antitrust Act.* A tying arrangement is an agreement whereby a seller conditions the sale of one product or service (the tying product) upon the buyer's purchase of a second product or service (the tied product). Northern Pac. R.R. v. United States, 356 U.S. 1, 5 (1958). A tying arrangement which poses an unacceptable risk of stifling competition in the sale or purchase of the tied product constitutes a violation of the antitrust laws. Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 9 (1984).
 
 
 13
 In order to establish an illegal tying arrangement, three factors must be shown: (1) two separate and distinct product markets must have been linked together; (2) the seller must be using its market power to force its customers to accept the tying arrangement; and (3) the tying arrangement must unreasonably restrain market competition in the tied product. Id. at 18; see also Faulkner Advertising Assoc., Inc. v. Nissan Motor Corp., 905 F.2d 769, 773 (4th Cir. 1990). The identification of two distinct products or services is often the greatest hurdle for antitrust plaintiffs who allege a tying violation. See Fortner Enters., Inc. v. United States Steel Corp., 394 U.S. 495, 507 (1969); Faulkner Advertising, 905 F.2d at 773.
 
 
 14
 In determining whether separate products existed here, the district court considered: (1) whether the sales practice is to sell the components separately or together; (2) whether there are separate charges for the components; and (3) whether it is more efficient to combine the components. Examining these factors, the district court concluded that the written descriptions of the real estate and the pictures of the real estate are simply components of one product: information about specific real estate properties.
 
 
 15
 RPM contends that the district court improperly looked to the functional relationship between the two products at issue here to analyze the "separate products" inquiry. It is true that the "question whether one or two products are involved turns not on the functional relation between the two allegedly separate products, but rather on the character of the demand for the two items." Service & Training, Inc. v. Data Gen. Corp., 963 F.2d 680, 684 (4th Cir. 1992), quoting Jefferson Parish, 466 U.S. at 19 (internal quotations omitted). In reaching the conclusion that pictures of real estate did not constitute a separate product from written descriptions of real estate here, the district court examined the issue from the buyer's perspective. First, the district court noted that written and photographic information concerning real estate have traditionally been purchased as a unit by buyers. Second, the court observed that RPM failed to identify a separate market demand for the photographs without some way to integrate the photographs with MCAR's written information on real estate listings. The district court's findings in this regard were not clearly erroneous, and thus it was not error for the district court to decline to consider the second and third prongs of the tying analysis. Because we agree with the district court's conclusion that the photographs and the written information constitute a single product, RPM's argument that MCAR's selling practice constitutes an illegal tying arrangement which is a per se violation of the antitrust laws fails.
 
 
 16
 As a final matter, RPM asserts that the district court erred in its treatment of the affidavit offered by RPM's expert, Dr. Lind. The district court had this to say about Dr. Lind's affidavit:
 
 
 17
 I have read and re-read Dr. Lind's affidavit. To me, the affidavit is a really useful and interesting argument in support of [RPM's] legal positions. He is not a person who has any particular knowledge about the real estate industry or what the real estate brokers want or do not want. He simply offers an antitrust analysis . In that sense, I have read it and re-read it, and it does not need to be admitted because he could have prepared a section for your brief which said the same thing.
 
 
 18
 I will consider Dr. Lind's affidavit insofar as it is argument concerning his analyses of the competitive and anticompetitive effect.
 
 
 19
 (Jt. App. at 865) (emphasis added).
 
 
 20
 RPM maintains that the district court erred in refusing to treat Dr. Lind's opinion as evidence rather than as argument. As we read the district court's discussion of the Lind affidavit, the district court agreed to consider the affidavit for what it was worth. In any event, as RPM concedes, the admissibility of an expert's opinion rests within the sound discretion of the trial judge, and appellate courts typically defer to the trial court's decisions on evidentiary matters. Persinger v. Norfolk & W. R., 920 F.2d 1185, 1187 (4th Cir. 1990). We find no basis on this record to disturb the district court's evidentiary ruling on appeal.
 
 III.
 
 21
 We find that RPM has failed to raise questions regarding the merits of its antitrust claims sufficient to clear the threshold showing required under Blackwelder for the issuance of a preliminary injunction. Accordingly, the decision of the district court is
 
 
 22
 AFFIRMED.
 
 
 
 *
 Section 1 of the Sherman Antitrust Act states that"every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several states ... is declared to be illegal." 15 U.S.C. § 1